Good morning, Your Honors, and may it please the Court. My name is Jeremy Peckis, and I represent Robert Englehardt in this other Social Security disability matter. If I could, I'd like to reserve three minutes for rebuttal. I'll help you. Go ahead. Thank you. The principal issue before the Court today is whether Englehardt's claim should be remanded for further investigation. I think that the best way to determine the outcome of that inquiry is a three-part test that's been called, ultimately the Harmon test, also at times the Smolin test. But essentially the thrust of it is that the district court should credit evidence that was discredited and remand for an immediate award of benefits if, first, the ALJ failed to provide legally sufficient reasons for rejecting the evidence. That prong is satisfied by virtue of the district court's own order, who did find that the ALJ's reasons were legally insufficient. The second part of the inquiry is whether there are any outstanding issues that must be considered before a finding of disability can be made. Mr. Peckis, can you explain to us why was there no, I guess it's called a consultative exam ordered? It looked to me like the ALJ actually recessed the hearing as opposed to closing the record. Right. The contemplation that there would be another exam by a qualified doctor. Why didn't that happen, do we know? And I don't. I was trial counsel, but I know that that's how we concluded. I can tell you that after the hearing, Dr. Kahn's assessment was submitted. It's speculation, but, well, it's possible that she deemed the record complete. But if she did feel that that examination was necessary, certainly she should have completed the record in that regard. But even if she felt that way You're going to have to figure my ignorance of, because we don't see this all that often. Sure. Is the burden essentially on the judge to decide whether she really needs, he or she needs another consultative exam opinion? Well, they have a duty to fully and fairly develop the record. But even if the judge did believe, and it appears she didn't by virtue of her issuing the decision, but even if she believed the examination were necessary, that doesn't necessarily mean that it was in fact necessary. Well, I guess the question I'm really trying to get at here is, what's the role of the claimant in sort of reminding the judge, this is the case where you thought we might benefit from having another consultative exam? Well I'm not trying to put you on the spot. I'm just trying to figure out how this works in practice. Yeah, procedurally how it works, and I'll take this case as an example, is I'll retreat to my office and wait for the exam to be scheduled. We'll typically get a notice and then it's scheduled. In this case, that never happened, and we just received an unfavorable decision in the mail instead. Had you taken a position on whether there should be another exam? No. What I said was, if an exam, if the court deemed an exam necessary, that the treating physician should be the one to perform it, because by regulation, the treating physician is the preferred source for an examination. By regulation, consultative examination is only ordered if the evidence that's being sought, the exam findings, whatever the case may be, isn't available from the treating source. Here we have the treating source, Dr. Contra. I guess I don't understand the concept of a consultative exam. I thought that's sort of similar to what the insurance company would call an independent medical exam. So you can't go back to the treating physician and say, I hereby designate you as the consultative examiner, can you? Well, that's how the process is employed in practice. What it's supposed to be is to fill in gaps in the record. For example I understand the gap. I guess the question is one of competency or credibility, maybe, I don't know. Do we normally send the claimant to a different specialist as opposed to going back to the treating physician in order to get kind of a, I guess you'd call it a second opinion to inform the ALJ as to the current condition? That's not supposed to be done. Don't go to an independent consulting examiner? The consultative examination reports appear in most cases. But again, by regulation, what's supposed to happen is to look to the treating physician first. I understand that. I'm sorry, I'm not understanding your question. Forgive me because I don't understand the terminology here. I thought a consultative exam is an examination that is done by a different doctor than the treating physician. And therefore, you can't ask the treating physician to conduct a consultative exam. Am I wrong? Respectfully, I believe so. Do you understand my question? Yes. And so I guess it's one of terminology. But the question is answered by the regulation. I'll get the citation for you. 20 CFR 4041519 subsection H. I'm sorry. 4041519H. What does that say? Essentially, the treating physician is the preferred source for an examination. But would that then be considered a consultative examination? Yes, Your Honor. Okay. I'm at a loss. I'm sorry, but you still haven't cleaned it up for me. All right. The ALJ says, oh, I think in this case we don't need a neurologist like the treating physician is. What we need is an orthopedist. In that case, she sent her back to the neurologist and said, give me an orthopedic exam. I don't think so. That doesn't make sense. Sure, and she did say that what she felt was needed was an orthopedic examination. If Engelhardt had more of a treating orthopedist, I would have recommended that that be the preferred source. But the examinations oftentimes are very, very similar anyways. They're not quite, at least those who practice say so. You know, in this case. And what you guys are usually arguing is that they're, you know, not as reliable because, you know, the treating physician has a long history. Oh, I'm sorry. Well, sorry to interrupt you. What I meant was an orthopedic examination and one done by a neurologist are typically, they perform very similar examinations at least. The exam itself. Right. It's just a question of a neurologist is just as competent as an orthopedist to do that exam is what you're saying. Correct. Okay. Correct. So I'm sorry if I misspoke. In this case, that's one of the reasons that the district court remanded the claim for further administrative proceedings was to order a consultative examination. As a practical matter, that doesn't do us a whole lot of good at this point. Engelhardt was last insured for disability insurance benefits in 2010. An examination today or a month from now doesn't tell us his condition in 2010, especially with a degenerative condition such as Mr. Engelhardt has. But given what happened here, and as I now understand from your answers, another report from Dr. Kahn was received, and I guess we have to assume the ALJ decided that she didn't need to order a consultative exam. Then the question becomes whether or not we should send it back and say, hey, you didn't do what you said you were going to do. That's the error. Can you explain to us why, in light of Dr. Kahn's subsequent report, that you still think this person is disabled? Yes. The ‑‑ Is that what Judge Holland did here, essentially saying I don't think the record was completely developed and that's why he ordered it remanded? He ordered it remanded for two reasons, and this speaks to prong two of the Harmon test. One was the ALJ's perceived need for an orthopedic examination, and the second was because there may be reasons that the ALJ could point to in order to reject Dr. Kahn's assessment, inciting Salvador in that regard. But in Salvador, the administrative law judge had not provided any reasons for rejecting the treating physician's assessment. Here the ALJ did provide the reasons she believed the assessment should be rejected. The district court found those reasons insufficient. And so to permit the ALJ to essentially take another stab at it. I guess when I read her decision, does she differentiate between the post‑hearing report and what Dr. Kahn said in that versus what Dr. Kahn had said in the evidence that was before her at the hearing? Well, at the hearing we had Dr. Kahn's treatment notes. Right. And then post‑hearing we had the assessment. But her decision doesn't distinguish, does it, between post‑hearing report? Not that I recall. I mean, we basically just have I'm giving it very little weight for whatever the reasons are. Correct. Okay. But Engelhardt has subsequently been awarded benefits. And so, again, we know his condition now. An orthopedic examination isn't going to do much as far as shedding any light on that either. But you want benefits for an earlier period of time. So that claim is still open. That's why you're here. Correct. It essentially becomes a closed period of disability. We're arguing for it. On remand, what is the legal significance of the fact that he's been awarded benefits for a new claim for a later period of time? Is that even admissible in the proceedings on remand? An ALJ would be aware of it. It isn't necessarily going to influence the decision one way or the other. Okay. Necessarily. Okay. Okay. What do we do with regard to the drug‑seeking behavior? It does appear to me that there were numerous instances in which he was trying to do an end run around his prescriptions. Sure. There are, admittedly, times where Engelhardt took more medication than was prescribed. One was believed to be a suicide attempt, but there are other occasions as well. That's a product of him being in increased pain. If you look at Dr. Kahn's records. It's either a product of being in increased pain and getting addicted and or wanting more because I guess there's some suggestion of recreational use. Right. It's beyond me why anybody would want to take some of this stuff for recreational purposes. Dr. Kahn notes that the medications that he's prescribing to Engelhardt, which include morphine, methadone, very strong narcotic medications, produce tolerance. Wasn't the methadone prescribed because he had become addicted to the opiate? Isn't that the purpose of methadone or does it have a separate function? The latter. Oh, it does. It does. It is prescribed as a pain medication. The larger point is this. He was, at the time of the hearing, excited for an implantation of a spinal cord stimulator, which was being designed to wean him off those medications. And so if he were truly just taking pain medications for recreational purposes, that would be curious behavior for someone like that. Well, at one point, wasn't it Dr. Kahn who threatened to stop seeing him if he continued the drug-seeking behavior? And I have to apologize because we've got so many of these cases this way and the facts are starting to blur. Yeah, he did essentially reprimand him at one point. And that's pretty serious when your doctor says, if I catch you doing this again, I'm not going to see you anymore. Sure. And then talks began about the spinal cord stimulator. And I think Engelhardt's reaction to that was important. The treatment notes do note that he was excited to have it done and he was just awaiting insurance authorization. And so if there were just a purely recreational purpose, again, I don't think that he would have been as excited and maybe would have sought treatment elsewhere. Do you want to save a couple minutes? Thank you, Your Honor. Thank you. Good morning. May it please the Court, I'm Jennifer Randall on behalf of the Commissioner of Social Security. The question for this Court is whether the district court abused its discretion when it fashioned the remedy that it did. The district court remanded this case for an orthopedic evaluation and it in particular specified an orthopedic evaluation. It also noted that there was evidence in the record conflicting with Dr. Kahn's opinion and that further proceedings were warranted to resolve those inconsistencies. The Commissioner asked this Court to affirm the district court's judgment because the district court did not abuse its discretion in finding that we have outstanding issues that need to be resolved before a determination about disability can be made. What the district court did struck me as logical in many respects, but I'm puzzled now as a practical matter what can happen. It was pointed out with the passage of time he's now been awarded benefits. I have to assume his condition now is not going to be better than it was before. What's an examination today going to reveal that will be helpful for the period of time that's covered by this case? That's a fair question, Your Honor. It's true that the examination will reflect his condition today, but an orthopedic specialist can also at the time of the examination review his medical records from the period at issue in this case, which as the district court noted, the medical expert that we had at the administrative hearing did not have access to all the records. And so based on both the examination and the treatment notes that we do have from the earlier time period, the orthopedic specialist could give a retrospective opinion about his condition during the time period that we're addressing in this case. Well, that opinion would be, sounds like, based less on an examination than on a review of past history. Well, I'm... Not to say it wouldn't be useful, but I'm not sure it really qualifies as an examination then. I mean, as we categorize the physicians, wouldn't be treating and wouldn't really be examining if I accept as a given, it may not be the case, but I accept as a given because benefits have been awarded, his current condition is going to be one that results in a finding of disability. The only possibility of leading to a different result, that is that the applicant's not disabled, wouldn't be based on an examination today so much as it would be based on a Well, I mean, your question assumes that he's been found disabled based on his back impairment. That's true. Ignorance is bliss. He may have had, you know, another impairment develop or contribute additional limitations beyond what we were looking at in the decision in this case. So I don't think we can assume that it's necessarily his back impairment that was the reason he was found disabled. Fair enough. But in addition to that, you know, I certainly am not an orthopedic specialist, but I think that we do see cases where they examine the claimant, they look at their medical records, and they sort of use that sort of global information to give a retrospective opinion. It's obviously not ideal, but it is one way that we try to get at functioning in these cases. I also wanted to address some of the court's prior questions about treating source and who should conduct the examination. As I noted, the district court in this case did specify an orthopedic examination. The ALJ called an orthopedic specialist to be a medical expert at the hearing, and it seems like the ALJ was particularly concerned with having someone who was a specialist with this type of impairment. The regulation cited by my opponent, 4-4-15-19-H, says when in our judgment your treating source is qualified, equipped, and willing. So those are three factors that are evaluated in looking at whether a treating source should conduct the examination. And here, as my opponent has conceded, Dr. Kahn is not an orthopedic specialist. I think part of the reason that we're here in this case is because we didn't have any orthopedic specialists offering opinions that in the court's, district court's view, were based upon all of the relevant evidence in the record.  that the examination itself is pretty much the same, whether it's done by a neurologist or an orthopedist? I do disagree with that statement, Your Honor. I think the court, the district court below, specified an orthopedic specialist. That was what the ALJ was interested in. And our regulations in looking at physician opinions, as one factor, note specialization, because there are cases where you do need someone who has a background in a particular area. And, you know, while my opponent clearly has a different view of this, I think that the district court did not abuse its discretion in finding that an orthopedic examination was warranted to evaluate the back impairment in this case. What was Dr. Goldman's specialty? He was an orthopedic specialist. And from the district court perspective, that appears to be the source of the problem, because Dr. Goldman had not, in fact, reviewed the entire record. Yes. Dr. Goldman had some of Dr. Kahn's records, but there appears to have been some glitch with the fax machine on the morning of the hearing, and so he did not get all of the records. I confess I've had the same problem that Judge Tallman referred to. These cases begin to blur, but it seemed to me like we're, I've now forgotten the number, 20, 30, 40 pages, something he had three of them that he could make sense out of. So it's not really much of the record that he had, it sounds like. The ALJ doesn't talk about that. The ALJ still talks about the need for further orthopedic examination. The district court seems concerned that I shouldn't count, or the ALJ shouldn't have counted Dr. Goldman for very much. But we go back to the ALJ's decision. Isn't that a basis for saying the ALJ's decision can't be sustained in the same way that the district court did? Which brings me to the, at what point does the credit as true rule intrude here? At what point do we have to say, look, this is the evidence that was put before the ALJ, not sufficient to sustain the ALJ's decision. Hence, under at least some of our court's case law, we have to go back and accept what the claimant and her treating physicians, his treating physicians said. Like I say, I've already mixed up the cases. Well, the Ninth Circuit recently held in the Straus case, cited in our brief that an ALJ's error is only relevant to the extent that it affects the analysis on the merits. The ultimate question is whether the claimant actually meets the statutory requirements for disability. In this case, we do have a gap in the evidence that the district court identified, and I think that it was within its discretion when it found that that was a relevant gap. And while my opponent is now asking the court to credit Dr. Kahn's opinion, under the rule, you know, Dr. Kahn was not an orthopedic specialist. This court has issued decisions, and I don't know how to pronounce it, but I'm going to say Taunapetian, the Taunapetian case cited in our brief, where when there is a failure to develop the record, that is an outstanding issue that warrants remand for further proceedings. So we think that failure to develop the record alone was a reasonable basis on which the district court remanded for further proceedings. But with regard to Dr. Kahn's opinion, there's precedent within the circuit saying that where there is evidence in the record that may provide valid reasons for discounting a treating physician's opinion, then the appropriate remedy is to send the case back to the agency for further proceedings to resolve those inconsistencies. In the Marsha case, this court pointed out that when the defects in the decision can be resolved with further proceedings, the appropriate remedy is to remand the case back to the agency to give that resolution. You mentioned one case, and I'm lost amongst the cases, too. Is it Strauss? Yes, the Strauss case, and I can provide you with that citation. Strauss v. Commissioner of Social Security, 635 F. 3rd, 1135. Thank you. Yes. So we do have ‑‑ I believe that the district court did not abuse its discretion when it found that we have outstanding issues in this case that need to be resolved before a determination about disability can be made. And unless the panel has further questions. Just to remind me, is this the case where you had actually asked the district court to remand, and eventually that's what Judge Holland did, but only after he reviewed the record? Yes. The agency requested preanswer remand in this case, because there were some parts of the hearing transcript where it was hard to tell what specific pages and what particular exhibits were being discussed. So the agency wanted to take the case back prior to filing an answer, have the ALJ clarify those exhibits, give the ALJ an opportunity to make any further development of the record that was necessary, and issue a new decision. My opponent opposed that request, and the district court ultimately ordered us to move forward on the merits. So then you went ahead and briefed the summary judgment issue. Yes. And the issue with Dr. Goldman, as I understand it, was he was provided all of the medical records in an electronic, what, a disk or something that was encrypted, but because of problems with the encryption, he couldn't access all the records that were on the diskette. I recall a problem with the fax, but it was some sort of technical problem. The fax problem, as I read the record, came later. Dr. Goldman said, I can't get access to all the documents on this disk. That's right. So then the ALJ said, well, we'll fax you the key pages that you can't look at, but then he didn't get all of the 39 pages. That's correct, Your Honor. Okay. And then when he was asked, do you have an opinion on his residual functional capacity, the answer was, I just don't have enough information, an opinion at this point. He did say that. I think it's also worth noting that he did describe some of the types of findings that he would look for as an orthopedic specialist, and those types of findings included things like straight leg raising, the degree of loss of range of motion, rather than just saying limited range of motion. And so we have access to all of Dr. Kahn's treatment notes, and looking through those, you can see that he didn't make specific findings on those issues. Many of his notes have findings only on a few issues, such as muscle spasms, tenderness, motor function. And so he probably, because he was not an orthopedic specialist, wasn't making findings on these issues. And so I think there's some question as to, you know, whether the additional notes would have provided the type of information that Dr. Kahn was looking for. Okay. Other questions? I think not. All right. Well, thank you, Your Honor. Okay. Initially I'd like to point out that the commissioner did move for remand in the proceedings below, but it wasn't to have an orthopedic examination scheduled. It was due to a claimed inability to file the administrative transcript. Engelhardt did oppose that motion for that reason. The district court ordered them to file the transcript. They filed a motion for reconsideration or a motion for relief from that order, again, claiming an inability to file the transcript. Well, one of the problems that we're having is, for example, trying to figure out exactly what was before Dr. Goldman. Is that part of the problem? It is. So the reason, part of the reason you can assume that the ALJ wanted the orthopedic examination was because this was after 45 minutes of Dr. Goldman talking about the absence of clinical findings and the notes he had. He didn't have the most important treatment records, Dr. Kahn's. He had four of 37 pages, two of which he claimed were blurry and difficult to read. Why did you oppose that request? Just because it would just further delay the processing of the claim? It wouldn't remedy the errors. They weren't moving for remand to have an orthopedic examination to give the records to Dr. Kahn. They just said, we're not able to file the transcript. And so it would have been sort of a generic do-over, I suppose. And so Dr. Goldman didn't have the most important records. The district court noted that Dr. Kahn's records were fairly detailed, always included examination findings, and always included abnormal examination findings. And so the district court has made a lot of those findings for us. I also wanted to point out that specialty is only one factor under the regulations. We're talking about orthopedists versus neurologists. But there are several other factors, including treatment relationship, length of treatment relationship, frequency of treatment, which really bolstered Dr. Kahn's status as a treating physician. Okay. Thank you very much. Thank you, guys. This argument is submitted.
judges: Duffy, Tallman, Clifton